IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02031-MEH

IRENE APO-OWUSU,

      Plaintiff,

v.

UNIVERSITY OF COLORADO HOSPITAL AUTHORITY,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Defendant University of Colorado Hospital Authority ("UCHA") seeks summary judgment on all of Plaintiff Irene Apo-Owusu's claims which arise out of allegedly discriminatory treatment of Ms. Apo-Owusu while she was employed as a Certified Nurse Aide ("CNA") at UCHA. The Court grants UCHA summary judgment on Ms. Apo-Owusu's third claim for retaliatory discharge, as well as her claim based on the February 2016 suspension, because those claims were not administratively exhausted. The Court also grants summary judgment on Ms. Apo-Owusu's supervisor hostile workplace claim. The Court denies summary judgment on Ms. Apo-Owusu's racial and ethnic discriminatory termination claim and coworker hostile workplace claim.

## BACKGROUND

### I.      Procedural History

      Ms. Apo-Owusu filed the operative Amended Complaint on September 2, 2016. Am. Compl., ECF No. 8. Ms. Apo-Owusu brings three claims for relief: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) ethnic discrimination in

violation of Title VII, and (3) retaliation for making discrimination complaints in violation of Title VII. *Id.* ¶¶ 57–71. On October 14, 2016, UCHA filed an Answer to the Amended Complaint. Answer, ECF No. 14.

After the parties completed discovery, UCHA filed this motion seeking summary judgment on all claims. Def.'s Mot. for Summ. J., ECF No. 29. UCHA argues summary judgment is warranted on Ms. Apo-Owusu's retaliation claim, any claim based on the February 2016 suspension, and incidents of harassment which occurred before October 15, 2015, because she failed to exhaust her administrative remedies for those claims. *Id.* at 11–12. UCHA then asserts that summary judgment is proper on Ms. Apo-Owusu's Title VII discrimination claim, because she cannot make a prima facie case of discrimination and because she cannot offer evidence that UCHA's proffered nondiscriminatory reasons for her termination were pretext. *Id.* at 12–13. Finally, UCHA argues summary judgment is warranted on Ms. Apo-Owusu's coworker and supervisor hostile workplace claims. *Id.* at 17–20. Ms. Apo-Owusu responded to UCHA's motion on July 27, 2017. Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 32. UCHA replied on August 10, 2017. Def.'s Reply, ECF No. 33.

## II.    Findings of Fact

The Court notes the following undisputed material facts, viewed in the light most favorable to Ms. Apo-Owusu, who is the non-moving party in this matter.

1.    Ms. Apo-Owusu was born in Ghana and immigrated to the United States in 2000. Pl.'s Resp. 9; Def.'s Reply 3.

2.    Ms. Apo-Owusu began working for UCHA in 2008. From February 8, 2009, until her termination, Ms. Apo-Owusu was a CNA in the Anschutz Outpatient Pavilion. Pl.'s Resp.

9; Def.'s Reply 3.

3.     Under UCHA's written policy prohibiting discrimination on the basis of, inter alia, race or national origin, if an employee witnesses or is subjected to prohibited discrimination, the employee must report that discrimination to a supervisor, Human Resources, or a discrimination compliance hotline.   Def.'s Mot. ¶ 6; Pl.'s Resp. 2; ECF No. 29-12 at 1.

4.     If a supervisor receives a report of prohibited discrimination, the UCHA policy requires the supervisor to report that conduct to Human Resources.   ECF No. 29-12 at 1.

5.     Ms. Apo-Owusu's direct supervisor was Nurse Manager Christine Woodman.  Def.'s Mot. ¶ 8; Pl.'s Resp. 10; Def.'s Reply 3.

6.     Ms. Woodman had the authority to recommend terminating an employee, but that decision had to be approved by UCHA Chief Human Resources Officer Dallis Howard-Crow.[1]  Def.'s Mot. ¶ 9; Decl. of Dallis Howard-Crow ("Howard-Crow decl.") ¶ 3, ECF No. 29-6.

7.     Matthew Cangeleri was a Charge Nurse at UCHA in March 2015.  Def.'s Mot. ¶ 23; Pl.'s Resp. 4.  Cathee Eriza and Anne Kilgore were Registered Nurses at UCHA.  Occasionally, Ms. Eriza would perform the duties of a Charge Nurse.  Def.'s Mot. ¶ 12.

8.     Charge Nurses have some supervisory capacity over other employees but lack authority to hire, fire, discipline, or promote.  Def.'s Mot. ¶ 11; Pl.'s Resp. 10; Def.'s Reply 3.

9.     In 2013, Ms. Apo-Owusu heard Ms. Eriza ask, "Where is our slave?"  Def.'s Mot. ¶ 22; Pl.'s Resp. 4.

10.    In March 2015, Ms. Apo-Owusu was emptying linens when she heard Mr. Cangeleri say, "Where is that nigger at?"  Def.'s Mot. ¶ 23; Pl.'s Resp. 4.

---

[1] Ms. Apo-Owusu's response facially denies this fact but does not provide any basis to refute it.  *See* Pl.'s Resp. 2.

11. Ms. Apo-Owusu asked Mr. Cangeleri if he was speaking to her. In response, Mr. Cangeleri gave Ms. Apo-Owusu a dirty stare and walked away. Pl.'s Resp. 10; Def.'s Reply 3.

12. Shortly thereafter, Ms. Apo-Owusu heard Ms. Eriza ask, "Where is the nigger at?" Ms. Apo-Owusu confronted Ms. Eriza about her use of the word, and Ms. Eriza did not use the word again. Def.'s Mot. ¶ 24; Pl.'s Resp. 4.

13. Sometime before October 2015, Ms. Apo-Owusu heard Ms. Kilgore ask, "Where is our slave?" Def.'s Mot. ¶ 29; Pl.'s Resp. 5.

14. In October 2015, Ms. Apo-Owusu heard Mr. Cangeleri say, "Where is that slave? I cannot wait to get rid of her." Def.'s Mot. ¶ 30; Pl.'s Resp. 4.

15. In addition to the instances discussed above, Ms. Apo-Owusu heard Mr. Cangeleri use the word "nigger" at least two times in 2015 and eight times in 2016. Def.'s Mot. ¶¶ 25–26; Pl.'s Resp. 4–5.

16. Ms. Apo-Owusu claims she reported these racial slurs to Ms. Woodman. Pl.'s Resp. 10; Dep. of Irene Apo-Owusu, Apr. 5–6, 2017 ("Apo-Owusu dep."), 139:11–40:22, 254:3–58:13, ECF No. 29-1.

17. UCHA disputes that Ms. Apo-Owusu reported these comments to Ms. Woodman. Ms. Woodman states Ms. Apo-Owusu only complained "that she believed her coworkers were talking about her behind her back." Def.'s Mot. ¶ 27; Decl. of Christine Woodman ("Woodman decl.") ¶ 10, ECF No. 29-5 ("Ms. Apo-Owusu complained several times that she believed her coworkers were talking about her behind her back. She never complained that her coworkers made racist comments about her or any other employee or that she was treated differently because of her race or national origin.").

18. Regardless of the nature of the reports Ms. Apo-Owusu made to Ms. Woodman, the parties agree Ms. Woodman did not report any use of racial slurs to her superiors. Dep. of Michael Kalisher ("Kalisher dep."), May 23, 2017, 37:7–:17, ECF No. 32-3.

19. On January 14, 2016, Ms. Woodman placed Ms. Apo-Owusu on a Performance Improvement Plan ("PIP"). Ms. Woodman designed the PIP to address specific areas of Ms. Apo-Owusu's employment in which Ms. Woodman wanted her to improve. Def.'s Mot. ¶¶ 40–41; Pl.'s Resp. 6.

20. On January 31, 2016, Ms. Apo-Owusu's CNA license lapsed.[2] The next day, Ms. Woodman suspended Ms. Apo-Owusu without pay until she had a valid license. Def's Mot. ¶¶ 45–46; Pl.'s Resp. 7.

21. Ms. Apo-Owusu appealed the suspension, and UCHA denied the appeal on March 18, 2016. Def.'s Mot. ¶ 53; Pl.'s Resp. 8; ECF No. 29-13 at 37.

22. During the week of March 21, 2016, UCHA found Ms. Apo-Owusu's performance had improved sufficiently to remove her from the PIP. However, UCHA reinstituted the PIP later that same week after her performance subsequently deteriorated. Def's Mot. ¶¶ 57–58; Pl.'s Resp. 8; ECF No. 29-13 at 23.

23. On April 1, 2016, Ms. Woodman recommended UCHA terminate Ms. Apo-Owusu's employment. Def.'s Mot. ¶ 62; Pl.'s Resp. 8.

24. On April 8, 2016, Mr. Howard-Crow reviewed and approved Ms. Woodman's recommendation. Def.'s Mot. ¶ 63; Pl.'s Resp. 9.

25. UCHA terminated Ms. Apo-Owusu's employment on April 14, 2016. Def.'s Mot. ¶ 65; Pl.'s

---

[2] The parties do not agree who is at fault for the expiration of Ms. Apo-Owusu's CNA license. Ultimately, assigning fault is not necessary for the disposition of this motion.

Resp. 8.

26.     On May 3, 2016, Ms. Apo-Owusu filed a Charge of Discrimination with the Equal

        Employment Opportunity Commission ("EEOC").  On the charge, she checked the boxes

        for discrimination based on race and national origin.  She did not check the box for

        retaliation.  Def.'s Mot. ¶ 66; Pl.'s Resp. 9; ECF No. 29-13 at 41.

27.     In the narrative section of the EEOC charge, Ms. Apo-Owusu wrote the following:

        I was subjected to racial harassment beginning in or about October 2015 through
        April 14, 2016, when I was terminated following several write ups and a
        Performance Plan.  I complained about the racial harassment but nothing was done
        to address the issue.  I have been working for the hospital since 2008.
        I believe that I have been discriminated against because of my race, Black, and my
        national origin, Ghanian, in violation of Title VII of the Civil Rights Act of 1964, as
        amended.

ECF No. 29-13 at 41.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant

summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits

show there is no genuine issue of material fact, and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit

under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis

for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry

its initial burden either by producing affirmative evidence negating an essential element of the

nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence

to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (alteration in original); *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

Ms. Apo-Owusu brings three claims for relief, all under Title VII. Ms. Apo-Owusu's first and second claims are for discrimination based on race and national origin. These claims do not

explicitly state whether Ms. Apo-Owusu asserts Title VII claims based on discriminatory termination or hostile workplace theories. *See* Am. Compl. ¶¶ 57–66, ECF No. 8. UCHA's Motion for Summary Judgment and Ms. Apo-Osuwu's Response assume Plaintiff is proceeding on both legal theories. *See* Def.'s Mot. 12–13, 15–20, ECF No. 29; Pl.'s Resp. 13–20, ECF No. 32. Therefore, the Court will address both. Ms. Apo-Owusu's third claim is for wrongful retaliation. UCHA first argues summary judgment is appropriate, because Ms. Apo-Owusu failed to exhaust her administrative remedies. UCHA then argues Ms. Apo-Owusu has failed to present evidence to support the remaining claims.

## I. Failure to Exhaust Administrative Remedies

UCHA argues Ms. Apo-Owusu failed to exhaust her administrative appeals on three potential claims: (1) the third claim for relief for wrongful retaliation; (2) any claimed based on the February 2016 suspension; and (3) any conduct that occurred before October 15, 2015. Def.'s Mot. 11–12.

### A. Claim III for Retaliatory Discharge

The law requiring exhaustion of remedies is well settled. "A plaintiff must exhaust h[er] administrative remedies before bringing suit under Title VII . . . ." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1049 (10th Cir. 1997). "The purpose behind the requirement of exhausting a claim with the EEOC is two-fold: 'protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claim.'" *Johnson v. Sears, Roebuck & Co.*, No. 14-cv-01119-MEH, 2014 WL 5293559, at *4 (D. Colo. Oct. 16, 2014) (alterations in original) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)). However, a Title VII plaintiff is not required to express her claims with exacting precision in an EEOC charge to satisfactorily exhaust her administrative remedies. The Tenth Circuit instructs that EEOC charges are to be to be liberally construed "in determining whether

administrative remedies have been exhausted as to a particular claim." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). A plaintiff's claim is then limited to "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.*

UCHA argues Ms. Apo-Owusu failed to exhaust her retaliation claim because she did not check the "retaliation" box in the EEOC charge. Def.'s Mot. 11. "A [plaintiff's] failure to check a particular box creates a presumption that a claimant is not making a claim on that ground." *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 672 (10th Cir. 2014); *Garcia v. Univ. of Kan. Hosp.*, No. 12-2792-KHV, 2013 WL 4482696, at *5 (D. Kan. Aug. 21, 2013) ("A plaintiff's failure to check the appropriate box on the administrative charge form for the type of discrimination alleged creates a presumption that he or she is not asserting claims represented by boxes not checked."). However, "the presumption can be rebutted by the claimant's narrative statement." *Asebedo*, 559 F. App'x at 672.

Ms. Apo-Owusu did not check the "retaliation" box in her EEOC charge. *See* ECF No. 29-13 at 41. Therefore, there is a presumption that she was not asserting that claim. The only language in the narrative portion of the charge that could plausibly be construed to rebut the presumption lies in Ms. Apo-Owusu's statement, "I complained about the racial harassment but nothing was done to address the issue." *Id.* In effect, Ms. Apo-Owusu's retaliation claim depends upon a finding that reporting instances of discrimination is sufficient to rebut a presumption that she did not intend to bring a retaliation claim.

In *Richardson v. TVC Marketing Associates, Inc.*, No. CIV-08-0597-F, 2008 WL 3992796, at *2 (W.D. Okla. Aug. 20, 2008), the plaintiff similarly sought to bring a retaliation claim after failing to check the "retaliation" box in the EEOC charge. The plaintiff argued that he rebutted the

presumption that he did not exhaust a retaliation claim by including the following in the narrative statement: "Once I became aware of my demotion, I complained to [several of the employee's superiors]." *Id.* at *2. The court decided that even construing the charge liberally, "nothing in the charge indicates a retaliation claim." *Id.* By contrast, in *Frazier v. The Board of County Commissioners of the County of Arapahoe*, No. 08-cv-02730-WYD-BNB, 2010 WL 924165, at *2 (D. Colo. Mar. 10, 2010), a plaintiff who did not check the retaliation box in an EEOC charge successfully rebutted the presumption against administrative exhaustion by stating he "was retaliated against and isolated by my co-workers and supervisors." The *Frazier* court found this statement sufficient to "trigger an inquiry into whether [the plaintiff] was retaliated against." *Id.*

The Court finds that Ms. Apo-Owusu's statement that she "complained about the racial harassment" insufficient to exhaust her administrative appeals. Like the plaintiff in *Richardson*, merely mentioning an individual complained about allegedly discriminatory conduct does not reasonably raise a retaliation claim. Unlike the plaintiff in *Frazier*, Ms. Apo-Owusu did not state that she was alleging she was retaliated against. Therefore, the Court finds that she has not exhausted her administrative remedies and grants UCHA's motion for summary judgment on the claim.

B.     The February 2016 Suspension

UCHA argues Ms. Apo-Owusu's discrimination claim is barred to the extent it seeks to recover based on the February 2016 suspension, because she has not exhausted her administrative remedies to that claim. Def.'s Mot. 11. Ms. Apo-Owusu does not contest this argument.

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114

(2002)).  A suspension by an employer is a discrete incident that a plaintiff must independently exhaust.  *Daneshvar v. Graphic Tech., Inc.*, 237 F. App'x 309, 313 (10th Cir. 2007).

Ms. Apo-Owusu's EEOC charge does not independently list the February 2016 suspension.  Moreover, the narrative section does not contain any indication that Plaintiff complains about the suspension.  Therefore, UCHA was not on notice of the potential claim against it, and the EEOC did not have the opportunity to potentially conciliate the claim.  To the extent Ms. Apo-Owusu attempts to recover for the February 2016 suspension, that claim is barred for failure to exhaust administrative appeals.

C.    Conduct That Occurred Before October 15, 2015

UCHA argues "[s]ummary judgment for UCHA is warranted on Ms. Apo-Owusu's harassment allegations that predate October 15, 2015," because she lists that date as the earliest date of harassment on the EEOC charge.  Def.'s Mot. 11–12.  As a preliminary matter, UCHA incorrectly states the date of earliest harassment on Ms. Apo-Owusu's EEOC charge.  The charge lists October 1, 2015, as the date of earliest harassment.  ECF No. 29-13 at 41.  Further, in the narrative section of the charge, Ms. Apo-Owusu broadens this time period by alleging, "I was subject to racial harassment beginning in or about October 2015 . . . ."  *Id.*

More importantly, individual acts of discrimination that support a hostile environment claim do not require the same administrative exhaustion as discrete acts.  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Nat'l R.R.*, 536 U.S. at 115.  These claims "occur[] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.*  Therefore, "[p]laintiffs [are] not required to exhaust administrative remedies with respect to all of the hostile work environment allegations because they [are] not discrete acts."  *Frazier*, 2010 WL 924165, at

*3. In other words, a "hostile work environment claim can include all acts related to the claim, even though some of those acts were not referenced in the EEOC charge." *Id.*

*Frazier* illustrates this point. There, the plaintiffs sought to support a hostile workplace claim with instances that were not alleged or referenced in their EEOC charge. *Id.* Still, the court found that the acts could be used to support the claim "even though some of those acts were not" administratively exhausted, because those acts "were not discrete acts." *Id.* Therefore, the Court denies UCHA's request for summary judgment on acts that occurred before October 2015 for a hostile workplace claim.

## II.     Discriminatory Termination Claims

UCHA argues summary judgment is appropriate on Ms. Apo-Owusu's racial and ethnic discrimination claims. Title VII states it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. 2000e-2(a)(1).

In determining the viability of a Title VII claim, the Court may consider both direct and indirect evidence of discrimination. "When a plaintiff offers direct evidence of discrimination in a Title VII claim, her claim may move forward without being subjected to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Ms. Apo-Owusu argues she has presented evidence of direct discrimination by UCHA. This argument is without merit. "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). "The classic example of direct evidence of discrimination comes from *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985),

where the Supreme Court held that an explicit, mandatory age requirement was direct evidence of age discrimination." *Tabor*, 703 F.3d at 1216. Additionally, "oral or written statements on the part of a defendant showing a discriminatory motivation" constitutes direct evidence of discrimination. *Tuffa v. Flight Servs. & Sys. Inc.*, 78 F. Supp. 3d 1351, 1356 (D. Colo. 2015) (quoting *Cuenca v. Univ. of Kan.*, 101 F. App'x 782, 788 (10th Cir. 2004)).

Ms. Apo-Owusu has not presented evidence that UCHA maintains a policy that explicitly discriminates against blacks or people of Ghanian descent. Instead, she argues she has presented direct evidence of discrimination because Mr. Cangeleri, a Charge Nurse with supervisory duties over Ms. Apo-Owusu, often used racial slurs. When she reported this conduct to Ms. Woodman, Ms. Woodman did not investigate the matter. These allegations do not amount to direct evidence of discrimination.

The *Tuffa* case presented a discussion of direct evidence of discrimination by statements showing a discriminatory motive. There, in dicta, the court noted that it would have accepted statements that the defendant "planned on terminating all the employees of African origin" as direct evidence of discrimination (although the court ultimately found the statement ambiguous). *Tuffa*, 78 F. Supp. 3d at 1357. Ms. Apo-Owusu has not alleged UCHA made statements that it terminated her because of her race or national origin. Therefore, this argument fails, particularly because the employees who allegedly made the slurs did not terminate her. However, these statements do constitute circumstantial evidence of discrimination.

"When evidence of discrimination is circumstantial, rather than direct, a plaintiff's claim is subject to the *McDonnell Douglas* burden-shifting framework." *Tabor*, 703 F.3d at 1216. Under the *McDonnell Douglas* framework, the initial burden is on the plaintiff to establish a prima facie case of discrimination. *Id.* If the plaintiff establishes a prima facie case, "the burden shifts to the

employer to proffer 'a legitimate non-discriminatory purpose for the adverse employment action.'" *Tabor*, 703 F.3d at 1216–17 (quoting *Orr v. City of Alburquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Orr*, 417 F.3d at 1149; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (stating that under the third step of the *McDonnell Douglas* framework, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination").

UCHA argues summary judgment is appropriate, because Ms. Apo-Owusu cannot establish a prima facie case of racial or ethnic discrimination. Def.'s Mot. 12. "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."[3] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The Tenth Circuit has repeatedly stated that a plaintiff's "burden in

---

[3] UCHA relies on elements of a prima facie case that are no longer used in the Tenth Circuit. To identify the elements of a prima facie case, UCHA cites to *Kline v. Utah Anti-Discrimination and Labor Division*, 418 F. App'x 774, 783 (10th Cir. 2011) and states the elements as follows: "a plaintiff must show (1) she belonged to a protected class, (2) she was satisfactorily performing her job, (3) an 'adverse employment action' by the employer, and (4) a causal connection between her protected characteristics and the adverse action." Def.'s Mot. 12. The Tenth Circuit has stated that this four-prong test "has limited, if indeed any, remaining application in this circuit." *Sarbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). Instead, the Tenth Circuit generally uses the three-prong test utilized by the Court here. *Bennett*, 792 F.3d at 1266 n.1 ("The Tenth Circuit has utilized a number of similar versions of the test, expressing a preference for more concise formulations.") Considering *Kline* was decided after *Sarbo*, the Court considers this an understandable discrepancy. However, UCHA's articulation of the prima facie case does not accurately state the elements in *Kline*. *Compare* Def.'s Mot. 12 (("(4) a causal connection between her protected characteristics and the adverse action"), *with Kline*, 418 F. App'x at 783 ("(4) similarly situated employees were treated differently from her").

articulating a prima facie case is slight." *Orr*, 417 F.3d at 1149; *see EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1197 (10th Cir. 2000). "While the elements of a prima facie case 'are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'" *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)).

UCHA argues Ms. Apo-Owusu cannot make a prima facie case of discrimination. First, UCHA argues that it did not take an adverse employment action against Ms. Apo-Owusu. This tortured argument is based upon the premise that Ms. Apo-Owusu was terminated, because she did not show progress under the PIP, and the PIP was not an adverse employment action. Def.'s Mot. 12–13. This argument ignores that UCHA could have terminated Ms. Apo-Owusu's employment, not because of her failure to follow the PIP, but because of her race or national origin.

"Title VII . . . expressly prohibit[s] discriminatory discharge as an adverse employment action." *Bennett*, 792 F.3d at 1267 (citing 42 U.S.C. § 2000e-2(a)(1)). Additionally, the Court believes that being terminated from a work environment where multiple coworkers had used racial slurs, and alleged complaints to the employee's supervisor about the racial slurs had resulted in no meaningful investigation, "give[s] rise to an inference of discrimination." *PVNF, L.L.C.*, 487 F.3d at 800. The Court finds that Ms. Apo-Owusu has met the "slight" and "not onerous" burden of a prima facie case of discrimination.[4]

The *McDonnell Douglas* burden then shifts to UCHA to offer "a legitimate non-

---

[4] Relying on its articulation of the prima facie case, UCHA makes the argument that Ms. Apo-Owusu has not met that burden, because she was not satisfactorily performing her duties. The Court does not address that argument, because it is no longer an element of the prima facie case of discrimination in the Tenth Circuit.

discriminatory purpose for the adverse employment action." *Orr*, 417 F.3d at 1149. UCHA argues that Ms. Apo-Owusu was terminated because she had "a long history of performance and behavioral issues . . . ." Def.'s Mot. 16. This is a legitimate nondiscriminatory reason for Ms. Apo-Owusu's termination, so the burden then shifts back to Ms. Apo-Owusu to demonstrate that this reason is pretext.

"A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Green v. New Mexico*, 420 F.3d 1189, 1192–93 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). For example, "'glaring contradictions' between the plaintiff's evaluations and the employer's proffered reason for taking the adverse action" may be used as evidence that a employer's proffered reasons are pretext. *Id.* at 1193. Pretext can also be shown by "evidence of differential treatment of similarly situated employees or procedural irregularities . . . ." *Bennett*, 792 F.3d at 1268–69. "Significantly, '[t]he evidence which [a plaintiff] can present in an attempt to establish that [a defendant's] stated reasons are pretextual may take a variety of forms . . . . [A plaintiff] may not be forced to pursue any particular means of demonstrating that [a defendant's] stated reasons are pretextual.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (alterations in original) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 187–88 (1989)). Pretext is usually demonstrated in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

*Green*, 420 F.3d at 1193 (quoting *Kendrick*, 220 F.3d at 1230).

The Court finds that Ms. Apo-Owusu has shown a genuine issue of material fact regarding pretext. UCHA's anti-discrimination policy requires that any individual who witnesses or has been subjected to prohibited discrimination report that violation to, among other available options, his or her supervisor. Def.'s Mot. ¶ 6; ECF No. 29-12 at 1.[5] This policy also requires any supervisor who receives a report of discrimination report that conduct to Human Resources. ECF No. 29-12 at 1. Ms. Apo-Owusu has presented evidence that Ms. Woodman acted contrary to this written policy.

Ms. Apo-Owusu and Ms. Woodman dispute whether Ms. Apo-Owusu reported the instances of UCHA employees using racial slurs to Ms. Woodman. Apo-Owusu dep., 139:11–40:22, 258:7–:13, ECF No. 29-1; Woodman decl. ¶ 10, ECF No. 29-5. As Ms. Apo-Owusu's direct supervisor, UCHA policy required Ms. Woodman to report this conduct to Human Resources, yet the parties do not dispute that she did not. Kalisher dep., 44:15–:19, ECF No. 32-3. Viewing the facts in light most favorable to Ms. Apo-Owusu, as the Court must, this is a departure from written policy that Ms. Apo-Owusu may present as evidence of pretext. Because a genuine issue of material fact exists, the Court denies UCHA's motion for summary judgment on Ms. Apo-Owusu's discriminatory termination claim.

## III. Hostile Workplace

UCHA argues summary judgment on Ms. Apo-Owusu's hostile workplace claims is appropriate. Def.'s Mot. 17–20, ECF No. 29. The basis for attributing liability to an employer under a hostile workplace claim differs depending on whether the harasser or harassers were

---

[5]Although the policy does not define "discrimination," viewing the facts in a light most favorable to Ms. Apo-Owusu, the Court can infer that "discrimination" includes racial slurs used in the workplace.

coworkers or supervisors. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). UCHA argues summary judgment is warranted on both claims.

A.     Coworker Harassment

"It is well established that 'a working environment dominated by racial slurs constitutes a violation of Title VII.'" *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981)). "To constitute actionable harassment, the conduct must be 'sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."'" *Bolden v. PRC Inc.*, 43 F.3d 545, 550–51 (10th Cir. 1994) (alteration in original) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"To survive summary judgment on a racially hostile work environment claim, a plaintiff must show 'that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Chavez v. New Mexico*, 397 F.3d 826, 831–32 (10th Cir. 2005) (quoting *Bolden*, 43 F.3d at 551). "In evaluating the first prong of a hostile work environment claim, [the court] look[s] at all the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "To establish a racially hostile work environment, however, plaintiffs must prove more than a few isolated incidents of racial enmity." *Hicks*, 833 F.2d at 1412 (quoting *Snell v. Suffolk Co.*, 782 F.2d 1094, 1103 (2d Cir. 1986)). "Instead, there must be a steady barrage of opprobrious racial comment." *Id.* (quoting *Johnson*, 646 F.2d at 1257). "Based on the totality of

the circumstances, the environment must be perceived both subjectively and objectively as abusive." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Furthermore, in the context of comments made by fellow employees, there must be a basis for attributing liability to the employer. *Bolden*, 43 F.3d at 551. UCHA argues summary judgment is warranted because the harassment at UCHA was not pervasive or severe enough to alter the terms, conditions, or privileges of Ms. Apo-Owusu's employment, and because the harassment cannot be attributed to UCHA. Def.'s Mot. 17–18.

### 1.     Pervasive Harassment

Judging a hostile work environment claim in the context of racially charged statements has been the subject of much debate. UCHA argues that the "small number of comments spread across such a long period of time is insufficient to establish severe and pervasive harassment" for a hostile workplace claim. Def.'s Mot. 18. The Tenth Circuit has indicated that there "'is not, and by its nature cannot be, a mathematically precise test' for a hostile work environment claim." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Harris*, 510 U.S. at 21). However, the Tenth Circuit's caselaw helps define the bounds of the minimal harassment to create a question of material fact of whether the harassment has become pervasive or severe enough to alter the terms or conditions of an employee's employment. In *Hernandez*, employees made racially motivated jokes on six to nine occasions over a two-year period in addition to other statements made with racial connotations. *Id.* at 958. The Tenth Circuit held "a rational jury could find that [the plaintiff's] workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter her conditions of employment." *Id.* Similarly, in *Smith v. Northwest Financial Acceptance, Inc.*, six sexual remarks over a twenty-three month employment created the same question of fact. 129 F.3d 1408, 1413–15 (10th Cir. 1997). The court noted that

these statements were made within earshot of other employees, which only added to the humiliation. *Id.* at 1414. While the court found this a "close question," it decided that the "evidence [wa]s . . . sufficient to support a finding of pervasive harassment." *Id.* at 1415. In contrast, in *Bolden*, the court found two overtly racist comments (including one use of the slur "nigger") and one other racial remark, accompanied by general nonracial ridicule over an eight-year employment, did not amount to pervasive conduct to create a hostile work environment. 43 F.3d at 551.

Here, the record indicates that Ms. Apo-Owusu was subject to being called "slave" and "nigger" on a relatively consistent basis over a two-year span. Sometime before October 2015, Ms. Apo-Owusu heard Ms. Kilgore ask, "Where is our slave?" Def.'s Mot ¶ 29; Pl.'s Resp. 5, ECF No. 32. In October 2015, Ms. Apo-Owusu heard Mr. Cangeleri say, "Where is that slave? I cannot wait to get rid of her," in the presence of Ms. Eriza and Ms. Kilgore. Def.'s Mot. ¶ 30; Pl.'s Resp. 5. Mr. Cangeleri said "nigger" four times in 2015 and eight times in 2016. Def.'s Mot. ¶¶ 25–26; Pl.'s Resp. 4–5. The testimony shows that employees of UCHA referred to Ms. Apo-Owusu as "slave" or "nigger" a total of fourteen times in 2015 and 2016, which is more than in both *Hernandez* and *Smith*. Given the opprobrious nature of the slurs and the fact that they were used in a closed workplace with coworkers present, a reasonable jury could find this sufficiently severe or pervasive to alter the conditions of Ms. Apo-Owusu's working environment. Therefore, the Court denies UCHA summary judgment on Ms. Apo-Owusu's Title VII coworker harassment claim.

## 2. Employer Liability

UCHA argues summary judgment is warranted, because coworker harassment cannot be attributed to UCHA. An employer may be held liable for a hostile work environment only when there are proper grounds for imputing liability to the employer. *Adler*, 144 F.3d at 673. The Tenth Circuit has identified three instances in which an employer may be held liable for harassment by its

employees:

> (1) where the acts are committed by an employee acting "within the scope of [his or her] employment"; (2) where the employer was negligent or reckless; or (3) where the employee purported to act or to speak on behalf of the employer and there was reliance upon apparent authority, or the harasser was aided by the agency relation.

*Id.* (alteration in original) (citing *Hicks*, 833 F.2d at 1417–18 (quoting Restatement (Second) of Agency § 219(1), (2)(b), & (2)(d) (1958))). Of these, the only potential basis for liability here is that UCHA acted negligently or recklessly.

The *Adler* case addressed the bounds of vicarious liability in this arena. "[A]n employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover . . . ." *Id.* at 673. There are two elements to attributing harassment to an employer: (1) the employer must have actual or constructive knowledge of harassment; and (2) the employer's remedial and preventative responses to any known response was inadequate. *Id.* UCHA argues neither element warrants attributing liability to UCHA. Def.'s Mot. 19. "An employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known. Actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees." *Adler*, 144 F.3d at 673.

The Court first finds that Ms. Woodman is a "management-level employee" whose knowledge can form the basis for attributing actual knowledge to UCHA. In *Adler*, the Tenth Circuit decided that an employee who was titled "supervisor," "had some authority over [the] plaintiff" and many of the plaintiff's coworkers, and reported to a supervisor who had the authority to hire, fire, and discipline was a "management-level" employee. *Id.* at 674. Similarly, Ms. Woodman was Ms. Apo-Owusu's direct supervisor. Def.'s Mot. ¶ 8; Pl.'s Resp. 10; Def.'s Reply 3, ECF No. 33. Ms. Woodman also had the authority to recommend an employee be terminated, and

that recommendation would be approved or denied by Mr. Howard-Crow. Def.'s Mot. ¶ 9; Howard-Crow decl. ¶ 3; ECF No. 29-6. Indeed, Ms. Woodman recommended the termination of Ms. Apo-Owusu here. Def.'s Mot. ¶ 62; Pl.'s Resp. 8. With *Adler* as guidance, the Court decides that Ms. Woodman was a management-level employee whose knowledge can be attributed to UCHA.

The question then becomes whether Ms. Woodman had knowledge of the harassment. Ms. Apo-Owusu states she reported the use of the terms "slave" and "nigger" to Ms. Woodman multiple times. Pl.'s Resp. 10. UCHA does not agree with this characterization of Ms. Apo-Owusu's testimony. UCHA states that Ms. Apo-Owusu reported to Ms. Woodman only that Ms. Apo-Owusu "thought her coworkers were talking about her behind her back." Def.'s Mot. ¶ 27. UCHA also states that, on another occasion, when Ms. Apo-Owusu attempted to speak with Ms. Woodman about the use of the word "slave," Ms. Woodman was busy and Ms. Apo-Owusu never successfully raised the issue. *Id.* ¶¶ 29–31. The Court does not agree with UCHA's characterization of Ms. Apo-Owusu's testimony. In her deposition, Ms. Apo-Owusu testified:

> Q.     When is the first time you remember telling Ms. Woodman about the use of the N word?
>
> A.     I believe somewhere in March 2015, there, yeah.
>
> Q.     What specifically did you say to Ms. Woodman?
>
> A.     I told [Ms. Woodman] about the word I keep hearing from [Mr. Cangeleri] when I'm working. Emptying linen, you know, and sometimes when he's looking for me instead of — not instead of calling, instead of me being away for a minute. When I come back, I keep hearing him say, Nigger or Nigger hurry or Slave, you here? I keep approaching him about it, but nothing is being done.
>
> . . .
>
> Q.     . . . Did you tell [Ms. Woodman] anything else when you went in to complain about Mr. Cangeleri?
>
> A.     No. Just those words [Mr. Cangeleri] had been calling me.

. . .

Q.     When you spoke with Ms. Woodman and told her that Mr. Cangeleri was calling you names, did you tell her a specific name that he was calling you?

A.     Yes.

Q.     And what name was that?

A.     Like nigger. Slave I've heard a couple of times.

Apo-Owusu dep., 139:11–40:22, 258:7–:13, ECF No. 29-1. Although Ms. Woodman states that Ms. Apo-Owusu never complained to her about coworkers making racist statements, Woodman decl. ¶ 10, ECF No. 29-5, this is a dispute of material fact about whether UCHA had actual knowledge of the racist statements that were occurring in Ms. Apo-Owusu's workplace.

The Court also finds a disputed issue of material fact as to whether the racial statements can be attributed to UCHA. An employer takes appropriate preventive or remedial action when it takes action "reasonably calculated to end the harassment." *Adler*, 144 F.3d at 676. UCHA's argument that UCHA acted reasonably to prevent or remedy the harassment is built on the premise that Ms. Apo-Owusu did not report the instances of harassment to Ms. Woodman. Def.'s Mot. 19 ("The only time Plaintiff complained to UCHA [about a slave comment], . . . UCHA promptly investigated."). This is not an argument that UCHA's response was adequate, but that there were no instances of reported harassment to which is was necessary to respond. The Court has already decided that a dispute of material fact exists to the extent Ms. Apo-Owusu reported the harassment to Ms. Woodman. Because UCHA makes no argument that it took steps to prevent Ms. Kilgore, Ms. Eriza, and Mr. Cangeleri from using the racial slurs, there is no basis for finding it acted appropriately to remedy known instances of harassment. Accordingly, the Court denies UCHA's motion for summary judgment on Ms. Apo-Owusu's coworker hostile work environment claim.

B.      Supervisor Harassment

When the harassing employee is a supervisor, "an employer may be vicariously liable for its employees' creation of a hostile work environment." *Vance*, 133 S. Ct. at 2441. For the purposes of a Title VII supervisor hostile workplace claim, a person is an employee's supervisor only if the "employer has empowered that employee to take tangible employment actions against the victim . . . ." *Id.* at 2443. This means that the supervisor has the power "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, Ms. Apo-Owusu's supervisor harassment claim fails because none of the employees who made the racially discriminatory remarks were Ms. Apo-Owusu's supervisor. Ms. Apo-Owusu does not contend that Ms. Kilgore, Ms. Eriza, or Mr. Cangeleri—the only UCHA employees the record suggests made racially offensive remarks—were Ms. Apo-Owusu's supervisors as defined by *Vance*. Ms. Kilgore was a Registered Nurse. Def.'s Mot. ¶ 12. Ms. Eriza was a Registered Nurse who occasionally filled in as a Charge Nurse. *Id.* Mr. Cangeleri was a Charge Nurse. *Id.* ¶ 23; Pl.'s Resp. 4. Neither of these positions possessed authority to hire, fire, discipline, or promote other staff members.[6] Def.'s Mot. ¶ 11; Decl. of Michael Kalisher ¶ 3, ECF No. 29-4. For these reasons, the Court grants UCHA's motion for summary judgment on Ms. Apo-Owusu's supervisor harassment claim.

---

[6] In her response brief, Ms. Apo-Owusu does not admit that Registered Nurses or Charge Nurses lacked the authority to hire, fire, or discipline other employees. *See* Pl.'s Resp. 3. However, Ms. Apo-Owusu presents no evidence to the contrary.

## CONCLUSION

Because Ms. Apo-Owusu has not exhausted her retaliatory discharge claim or her claim based on the February 2016 suspension, summary judgment is proper. The Court also grants summary judgment on the supervisor harassment claim. However, the Court denies summary judgment on the discriminatory termination and coworker harassment hostile workplace claims, because disputed issues of material fact exist as to those claims. Accordingly, UCHA's Motion for Summary Judgment [filed June 26, 2017; ECF No. 29] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 26th day of September, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge